# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| ANTHONY LUCAS | * | CIVIL ACTION |
| --- | --- | --- |
| VERSUS | * | NO. 16-5009 |
| UNITED STATES OF AMERICA | * | SECTION "L" (4) |

## ORDER & REASONS

Before the Court is Defendant United States of America's Motion for Summary Judgment. R. Doc. 16. Plaintiff opposes the Motion. R. Doc. 20. Defendant timely replies. R. Doc. 23. Having reviewed the parties' arguments and applicable law, the Court now issues this Order and Reasons.

### I.  BACKGROUND

This case involves the denial of an Administrative Claim and written demand under the Federal Torts Claim Act. R. Doc. 1 at 1. Plaintiff, Anthony Lucas ("Lucas"), underwent a surgical procedure known as a superior rectus recession on his left eye while a patient at the Veterans Administration Medical Center. R. Doc. 1 at 3. Lucas alleges that the medical providers were negligent in their performance of the superior rectus recession and severed or damaged muscle tissue in Lucas's left eye, leaving him unable to open his eye. R. Doc. 1 at 3.

Lucas alleges that at all material times, the medical providers at the Veterans Administration Medical Center were acting in the course and scope of their employment. R. Doc. 1 at 2. According to Lucas, the medical care provided by the Veterans Administration deviated from the appropriate standard of care. Lucas seeks damages for physical pain and suffering, emotional distress, loss of enjoyment of life, medical bills, loss of physical function, disfigurement,

post-judgment interest, and fees and costs. R. Doc. 1 at 4.

Defendant United States of America timely answered on July 25, 2016. R. Doc. 7 at 1. The United States asserts a number of affirmative defenses dependent on the Federal Torts Claim Act to limit Lucas's possible relief. R. Doc. 7 at 4. The United States also contends that relief should be limited to Louisiana's medical malpractice cap, and that Lucas failed to mitigate his damages. R. Doc. 7 at 4. Furthermore, the United States asserts that the injury arose from a non-connected accident or pre-existing condition, or, in the event that the United States is found negligent, superseding and intervening negligence of third parties broke any causal connection between the United States' negligence and Lucas's injuries. R. Doc. 7 at 6.

## II. PRESENT MOTIONS

### a. Defendant's Motion for Summary Judgment (R. Doc. 16)

Defendant now moves for summary judgment and argues that without an expert witness, Plaintiff cannot satisfy the necessary elements to prevail on his medical malpractice claim under Louisiana law. R. Doc. 16 at 1. In particular, Defendant contends that expert testimony is necessary to establish the applicable standard of care and whether Defendant breached that standard. R. Doc. 16 at 1. Defendant explains the initial deadline for submitting expert reports or disclosures in this case was March 13, 2017. R. Doc. 16 at 2. Plaintiff moved for a 30-day extension, which the Court granted. R. Doc. 16 at 2. Despite the extension, Plaintiff has been unable to produce an expert report, and has not indicated he will be able to do so. R. Doc. 16 at 2.

Defendant argues that to prevail on a claim for medical malpractice under Louisiana law, Plaintiff must establish the applicable standard of care, that the provider breached the standard of care, and that the breach was the causal connection of Plaintiff's injury. R. Doc. 16 at 5 (citing *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1233). Generally, expert medical

testimony is required to meet these elements, particularly "when the medical and factual issues are complex and outside the province of a lay juror's common knowledge." R. Doc. 16 at 5 (quoting *Thomas v. United States,* 2005 WL 757268, *9 (E.D. La. March 31, 2005)). Defendant argues that the alleged medical malpractice in this case is not so egregious that it would be obvious to a lay person, and therefore Plaintiff must provide expert witness testimony to prevail on his claim. R. Doc. 16 at 6. In particular, Defendant contends that without expert testimony it is impossible to establish that his eye injury was caused by negligence, as opposed to some non-negligent occurrence. Further, Defendant avers that Plaintiff cannot prove the injury was a result of this particular procedure, rather than a result of his ongoing treatment for a degenerative eye condition. R. Doc. 16 at 6.

      **b. Plaintiff's Response (R. Doc. 20)**

Plaintiff opposes the Motion and argues expert testimony is not necessary in this case, as the average lay person "may easily infer negligence" without expert testimony. R. Doc. 20 at 4. Plaintiff explains that before the July 2014 surgery, he could fully open his left eye. R. Doc. 20 at 4. After the surgery, he was no longer able to do so. R. Doc. 20 at 4. According to Plaintiff, "such a drastic and unexpected outcome could only have occurred as a result of substandard care provided by the VA medical staff." R. Doc. 20 at 4. Further, Plaintiff contends that he has identified several medical providers on his witness list that will establish the applicable standard of care. R. Doc. 20 at 5.

In support of his argument, Plaintiff provides two photographs of himself. One is marked "before" and shows Lucas standing with both eyes fully open. R. Doc. 20-2. The second is marked "after" and shows Lucas standing with one eye slightly swollen and completely closed. R. Doc. 20-3. According to Plaintiff, these photos "easily permit a lay person to infer" that Defendant was

3

negligent while performing the surgery. R. Doc. 20 at 4.

### c. Defendant's Reply (R. Doc. 23)

In response to Plaintiff's argument, Defendant contends that Plaintiff cannot demonstrate the applicable standard of care, or that Defendant breach the standard of care while treating Mr. Lucas. R. Doc. 23 at 1. Defendant argues that up until filing his response, Plaintiff had taken the position he would rely on expert testimony and to change course at this stage in the proceedings unfairly prejudices Defendant. R. 23 at 2. In particular, Defendant argues that Plaintiff never explained he intended to rely on Plaintiff's treating physicians to establish the standard of care, nor has he submitted the required expert reports to allow such testimony. R. Doc. 23 at 2-3.

Next, Defendant argues that the "obviously careless act" exception does not apply in this case, as Plaintiffs have not submitted evidence of such an act. R. Doc. 12 at 5. Furthermore, Plaintiff had undergone at least five procedures on his left eye and has experienced some eye-drooping complications after at least three of the procedures. R. Doc. 12 at 5. Thus, Defendant argues a lay person cannot determine what percentage—if any—of Plaintiff's complications are due to this procedure. R. Doc. 23 at 6. Additionally, Defendant argues that Plaintiff signed a consent form prior to this procedure, which specifically stated that ptosis, or droopy eyelid, was one of the known risks of the procedure. R. Doc. 23 at 6. Because it was a known complication, Defendant contends a lay person cannot infer negligence merely because the complication occurred. R. Doc. 23 at 7.

Finally, Defendant argues that the photos Plaintiff submitted and potential testimony of the treating physicians are insufficient to establish the prima facie elements of Plaintiff's case. R. Doc. 23 at 7. First, Defendant contends the photos are unreliable. The photographs are undated, which makes it impossible to tell if the "before" picture portrays Plaintiff before he underwent any

medical procedures, or was taken after he had already experienced some complications from his earlier treatment. R. Doc. 23 at 8. Second, Defendant argues Plaintiff has not identified which treating physicians will testify regarding the applicable standard of care in this case or provided any description of their proposed testimony. R. Doc. 23 at 8-9. According to Defendant, this violates even the limited disclosure requirements for treating physicians under Rule 26. R. Doc. 23 at 10. Because Plaintiff has not provided "notice of the facts and opinions" the proposed expert witnesses will present, Defendant contends these treating physicians should not be allowed to testify as experts. R. Doc. 23 at 10 (quoting *Skyeward Bound Ranch v. City of San Antonio*, No. 10-0316, 2011 WL 2162719, at *3 (W.D. Tex. June 1, 2011)).

## III. LAW AND ANALYSIS

### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden,

5

then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### b. Federal Tort Claims Act

Mr. Lucas's claims allege tortious conduct by the United States and are brought pursuant to the Federal Tort Claims Act ("FTCA"). As a general matter, the United States is immune to suits brought by individuals except where it has explicitly waived its immunity by statute. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d 281, 287 (5th Cir. 2012). The FTCA creates such a waiver, and "provides the sole basis of recovery for tort claims against the United States." *Id* . (citing 28 U.S.C. § 2671, § 1346). Specifically, the statute provides:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his office or employment, under circumstances *where the United States, if a private person, would be liable to the*

*claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (emphasis added). As is the case with all waivers of sovereign immunity, the language of the FTCA is to be "narrowly construed in favor of the United States." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d at 287.

The FTCA "requires application of the whole law of the [s]tate where the act or omission occurred," including that state's choice of law rules. *See Richards v. United States,* 369 U.S. 1, 11 (1962); *Guillory v. United States,* 699 F.2d 781, 784 (5th Cir. 1983). It is therefore possible that a state's choice of law rules may require application of yet another state's substantive law.

Accordingly, it is necessary to determine where the alleged torts occurred in order to apply the appropriate choice of law provisions. In the context of claims brought under the FTCA, a tort occurs in the place of the act or omission, not the place of the resulting injury. *Richards,* 369 U.S. at 9–10*; see, e.g., Ins. Co. of Pa. v. United States,* 590 F. Supp. 435, 442 (S.D. Miss. 1984) (holding that where acts or omissions of an out-of-state tortfeasor caused an in-state injury, the law of tortfeasor's state must be applied).

Here, it is apparent that the alleged acts or omissions occurred in Louisiana. Mr. Lucas was a patient in the ophthalmology unit at the Veterans Administration Medical Center in New Orleans, Louisiana. R. Doc. 1 at 2. The surgery which allegedly led to Mr. Lucas' injuries took place on July 24, 2014 in New Orleans, Louisiana. R. Doc. 1 at 3. As the entirety of the medical treatment was rendered in Louisiana, Louisiana law governs Plaintiff's claims for medical malpractice.

    c. **Louisiana Medical Malpractice Act**

Louisiana law establishes the elements of a medical malpractice action. To prevail on a claim for medical malpractice, Louisiana Revised Statute 9:2794 requires a plaintiff to prove: (1)

the applicable standard of care; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. "Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So. 2d 880, 883–84. Thus, the question currently before the Court is whether the alleged negligence in this case "is so obvious" that expert testimony is not necessary.

### d. Discussion

Based on the undisputed facts in this case, the Court finds that Plaintiff's claim does not fall within the narrow "obviously careless act" exception. To prevail on his claims of negligence, Plaintiff must prove the standard of care applicable to this case, and that Defendant breached this standard of care. Even assuming Plaintiff's treating physicians could establish the applicable standard of care[1], Plaintiff has not provided any evidence that Defendant breached that standard. The alleged negligence in this case is not obvious. Expert testimony is required to demonstrate that Plaintiff's injury was a result of Defendant's negligent act during the surgery.

In Plaintiff's response, he argues expert testimony is not required when a physician commits an "obviously careless act." The examples Plaintiff provides all involve overt acts, which could be observed directly by a lay witness—such as breaking a leg, dropping a surgical instrument, or amputating the incorrect limb. However, the surgical procedure at issue here did not involve any such act. Plaintiff experienced a known complication after his surgery. He had experienced varying degrees of this same complications after earlier procedures. There is absolutely no evidence to suggest the complication was a result of some negligent act during the

---

[1] Defendant argues such testimony would violate Federal Rule of Civil Procedure 26's requirements for treating physicians; however, the Court finds it is unnecessary to reach a ruling on this issue.

surgery. Under Louisiana law, "Medical expert testimony [is] necessary to determine the standard of care, breach and causation where the surgery procedure [is] involved." *Williams v. Metro Home Health Care Agency, Inc.*, 817 So. 2d 1224, 1229 (La. App. 4 Cir. 5/8/02). Without expert testimony, Plaintiffs cannot demonstrate that Defendant breached the standard of care, or that the alleged breach caused Plaintiff's injury. Because Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case," the Court finds Defendant is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

IV. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment, R. Doc. 16, is **GRANTED**.

New Orleans, Louisiana, this 1st day of May, 2017.

_____
UNITED STATES DISTRICT COURT JUDGE